IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| D.G., by and through ) | | |
| LOIDY TANG as Next Friend, individually ) | | |
| and on behalf of a class, ) | | 11 C 2062 |
| ) | | |
| Plaintiff, ) | | Judge Joan H. Lefkow |
| ) | | |
| v. ) | | |
| ) | | |
| DIVERSIFIED ADJUSTMENT SERVICE, ) | | |
| INC, ) | | |
| ) | | |
| Defendant. ) | | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff D.G., a minor by and through Loidy Tang as Next Friend ("Plaintiff"), submits this memorandum in opposition to Diversified Adjustment Service, Inc.'s ("Defendant") Rule 12(b)(1) motion to dismiss Plaintiff's claim brought under the Telephone Communication Protection Act ("TCPA") arguing that Plaintiff lacks standing. Defendant's motion here is without merit, extracting language without context from case law and even misstates a material allegation in Plaintiff's Complaint. *Compare* "Plaintiff admits that the called party was Ch[i]vette Nelson", (Def. Memo. p. 6), *to* "Under the TCPA, Plaintiff is the 'called party'." (Doc. 1, Complt. p. 7 ¶ 33).

Defendant's motion should be denied as under the TCPA Plaintiff has standing, because Plaintiff is the regular user of the cellular telephone at the time Defendant placed its automated call with a prerecorded or artificial voice to that cell phone's number. To interpret the term "called party" as used in the TCPA as the "intended called party", a party that was never called, as Defendant suggests, would be contrary to the plan language of the statute, the technical

requirement set forth in 47 U.S.C. § 227(d)(3)(B), the intent of the statute, FCC Orders, case law and would make the remedy provisions of TCPA § 227(b)(3) meaningless. Therefore, Defendant's motion should be denied as Plaintiff has the requisite standing to seek redress in the form of statutory damages and injunctive relief under the TCPA.

## FACTS

Plaintiff resides in the Northern District of Illinois and has a cellular telephone number ending with the digits 3747. (Complt. ¶¶ 5-6). Plaintiff regularly makes and receives telephone calls to this number and corresponds with a cell phone generally carried on Plaintiff's person. (Complt. ¶¶ 5, 6, 13, 20-21). When Defendant called, Plaintiff handed the cell phone to his mother as Plaintiff did not recognize the caller-id. (Complt. 21). Plaintiff did not provide any express prior consent for Defendant to call Plaintiff's cellular telephone. (Complt. ¶ 2).

Defendant intended to call the telephone number ending in the digits 3747 a reach a person whose telephone number corresponded with the telephone number ending in the digits 3747, but reached Plaintiff instead. (Complt. ¶¶ 15-16, 20-21). Using its predictive dialer, Defendant placed a phone call to Plaintiff's cell phone and transmitted a prerecorded message with an artificial attempting to collect a debt from Chivette Nelson. (Complt. ¶ 9, 21-22). Defendant was on constructive notice at the time of the March 23, 2011 call that Plaintiff's cellular phone number was not Chivette Nelson's. (Complt. ¶ 23).

Defendant is a member of ACA International which has distributed information to its members though its "Fast Fax" informational publications that the TCPA applies to both debtors and non-debtors alike and liability can attach to called numbers that are not that of the debtor; wrong numbers. (Complt. ¶¶ 26, 28).

## ARGUMENT

A Rule 12(b)(1) motion is used to challenge whether under Article III of the Constitution a plaintiff has standing. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 1993); *CHA v. Bd. of Dirs.,* 10 C 7681, 2011 U.S. Dist. LEXIS 27726 * 2 n. 1 (N.D. Ill. Mar. 16, 2011) (Lefkow, J). This Court has previously recited the standards for ruling on a 12(b)(1) motion in *Purcell v. United States*, 09 C 6137, 2010 U.S. Dist. LEXIS 109348 * 3-4 (N.D. Ill. Oct. 14, 2010) (Lefkow, J.).

### PLAINTIFF AS THE "CALLED PARTY" STATES A VALID CLAIM UNDER THE TELEPHONE CONSUMER PROTECTION ACT

The TCPA, 47 U.S.C. §227, in pertinent provides:

§ 227. Restrictions on use of telephone equipment

(b) Restrictions on use of automated telephone equipment.

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States *if the recipient is within the United States*–

(A) *to make any call* (*other than a call* made for emergency purposes *or made with the prior express consent of the called party*) *using any automatic telephone dialing system or an artificial or prerecorded voice*– [* * *]

(iii) *to any telephone number assigned to a* paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the *prior express consent of the called party*, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B); [ * * *]

(d) Technical and procedural standards

(3) Artificial or prerecorded voice systems

> The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that— [ * * *]
>
> (B) *any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls*.

47 U.S.C. §§ 227(b), (d) (emphasis added).

According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, automated calls to cellular telephones that do not fall under the two narrow exceptions of TCPA § 227(b)(1)(A) are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

The TCPA authorizes a person or entity to act as a private attorney general to bring suit for any violation of 47 U.S.C. § 227(b). 47 U.S.C. § 227(b)(3) not only provides "a person or entity" actual or statutory damages of $500 for each violation, which ever is greater, it also permits injunctive relief from future violations. 47 U.S.C. §§ 227(b)(3)(A), (B) and (C). Congress made injunctive relief available to a TCPA plaintiff because it "found that consumers were helpless to prevent such unwanted [ ] calls, and were particularly unable to stop the calls . . . themselves." *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) (*quoting Abbas v. Seeling Source, LLC,* 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697 * 27 (N.D. Ill. Dec. 14, 2009)); *See also Watson v. NCO Group, Inc.*, 462 F. Supp. 2d

4

641, 644-45 (E.D. Pa. 2006)1 (finding in a residential line TCPA case that "the Court is convinced that a non-debtor's rights [under the TCPA] are in fact violated when he is subjected to repeated annoying and abusive debt collection calls that he remains powerless to stop."). Indeed, Plaintiff has been helpless in preventing unwanted autodialed calls with prerecorded messages from debt collectors.   *See* (Complt. ¶ 23).

Defendant however argues that Plaintiff lacks standing because, "only the 'called party', Chivette Nelson has statutory standing to assert this [TCPA] claim."   (Def. Memo. p. 10). Adopting Defendant's argument would mean that Chivette Nelson, a person whose phone never rang, and who at all times relevant might not of even had or used a telephone, would have a cause of action, not Plaintiff the regular user of the cell phone who was actually called. Congress clearly could not have intended this bizarre outcome and even Defendant's own trade association, ACA, believes that a claim under the TCPA is available to a person other than the intended debtor; a wrong number.   (Complt. ¶¶ 26, 28).

The plan language of the TCPA refers to the location of the "recipient"2, uses the phrase "called party" and provides a private right of action to "a person or entity."   TCPA §§ 227(b)(1), (b)(1)(A), (b)(3).   Nowhere in the TCPA § 227(b) did Congress ever draft a requirement that in a cell phone case, the called party needed to be the "intended person." Constructing the TCPA to only permit suit by the "intended recipient" of the call, as opposed to

---

1 *Watson*, has two opinions under the F. Supp. 2d cite.   The one cited in this memorandum can be obtained with the LEXIS cite, 2006 U.S. Dist. LEXIS 87499.

2 However, the called party need not actually have received the call to their cell phone for liability under the TCPA to be triggered. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010); *CE Design Ltd. v. King Architectural Metals, Inc.*, 09 C 2057, 2010 U.S. Dist. LEXIS 131662 * 16 (N.D. Ill. Dec. 13, 2010) (*quoting Hinman v. M and M Rental Center*, 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2010) *vacated and remanded on other grounds* 2011 U.S. App. LEXIS 5365 (7th Cir. Mar. 18, 2011).

the party who receives the call, has the effect of rendering the intended protections of the TCPA, the technical requirements of 47 U.S.C. § 227(d)(3)(B) and its explicit private cause of action provisions meaningless. This would be improper. *Beck v. Prupis*, 529 U.S. 494, 506 (2000) (A court must abide by the "longstanding canon of statutory construction" by reading the statute as a whole, not in a way that by the reading of one provision within the statute it would render another provision meaningless or superfluous.)

The textual provisions of the TCPA demonstrate this. For example, the only affirmative defense available to a TCPA defendant is to show that it had the "prior express consent of the *called party*" when it made the call. 47 U.S.C. § 227(b)(1)(A) (emphasis added). It would not make any sense to require Chivette Nelson's consent to calls made to Plaintiff.

Similarly, the TCPA provides that a "person or entity" may request and obtain injunctive relief in the form of an order enjoining a defendant from making further calls. 47 U.S.C. §§ 227(b)(3), (b)(3)(A), (C). It would be nonsensical to read the TCPA in a manner as Defendant argues that Chivette Nelson is the only person with standing under the TCPA to seek injunctive relief to prevent Defendant from placing any future automated phone calls to Plaintiff's cell phone.

Furthermore section 227(d)'s "technical and procedural standards" section of the TCPA requires that "*any such system* [that transmits any artificial or prerecorded voice message via telephone] *will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls*. 47 U.S.C. § 227(d)(3)(B) (emphasis added). In this case, a prerecorded message with the name Chivette Nelson placed into the message by artificial text-to-speech technology was delivered to Plaintiff's cell phone.

(Complt. ¶¶ 21-22). Inserting Chivette Nelson's name into section 227(d)'s phrase "called party" does not make sense, "*release [Chivette Nelson's] line* within 5 seconds[,]" because Chivette Nelson's phone line a line not engaged by Defendant's prerecorded message. Under the plain language of the technical requirement of 47 U.S.C. § 227(d)(3)(B), Defendant was required to "*release [Plaintiff's] line* within 5 seconds" as Defendant's prerecorded message engaged Plaintiff's cell phone line. Clearly the language of 47 U.S.C. § 227(d)(3)(B) is only applicable to the regular user of the cell phone whose telephone number is called. To interpret 47 U.S.C. § 227(d)(3)(B) otherwise, renders the provision meaningless.

Case law interpreting "called party" in other TCPA and telecommunications cases supports Plaintiff's reading of the phrase too. "Called party refers to the person receiving the call." *California v. FCC*, 75 F.3d 1350, 1357 n. 9 (9th Cir. 1996). A called party is, "a party or place to which a call is being made." *In the Matter of Communications Assistance for Law Enforcement Act*, 17 FCC Rcd 6896, 6911, 2002 FCC LEXIS 1716, *46, 26 Comm. Reg. (P&F) 540 (April 11, 2002); *see Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846, 2011 U.S. Dist. LEXIS 686 * 4-5 (N.D. Ill. Jan. 5, 2011) (the court rejecting the defendant's standing argument that, "plaintiff lacks standing because the cell phone number at which she was called was registered to her husband is also meritless.")3.

The court's ruling in *Balbarin* finding that a non-subscriber who was the recipient of calls to the cell phone she regularly used has standing under the TCPA is sound because Congress

---

3 In *Balbarin*, the plaintiff was a victim of identity theft and furthermore the thief did not provide the plaintiff's cell phone number to the credit issuing company. *Balbarin v. North Star Capital Acquisition, LLC*, 10 C 1846 (N.D. Ill.), Doc. 157, p. 4 *citing* Group Exhibit C, Capital One's records (Redacted). In *Balbarin*, the defendant obtained the plaintiff's telephone number via skip tracing, from Experian. *Id*., Doc. 117, pp. 4-5 *citing* Exhibit A, Kuzmitski Deposition; Exhibit B the defendant's collection notes. Under Defendant Siegel's argument made here, only the identity thief in *Balbarin* would have standing to pursue a TCPA claim. Such a reading of the TCPA creates a bizarre result.

intended that a person who at the time of the call regularly uses the phone is the "called party." This intent is shown in that Congress used the phrase "called party" into four distinct prohibitions in TCPA § 227(b). In the case of guests and patients in hospitals and health care facilities the "called party" under TCPA §227(b)(1)(A)(ii) will generally *not* be the "subscriber," and in the case of emergency lines under TCPA §227(b)(1)(A)(i) the "subscriber" of "fire protection or law enforcement agency" is a city or county. Consequently, "called party" cannot be read to mean "subscriber" as the term identifies the person or entity who regularly uses the phone at the time of the autodialed phone call.

Defendant here however takes out of context the *Balbarin* court's language, "plaintiff was the intended recipient of the call." *Balbarin*, 2011 U.S. Dist. LEXIS 686 at * 5; (*See* Def. Memo p. 9). In *Balbarin*, that defendant made the argument that the plaintiff did not have standing because she was not the "subscriber" of the cell phone. (*Balbarin*, Doc. 131, p. 4) ( "the billing statement for the phone in question was also issued in her husband's name, alone. *[Exhibit A, Deposition of Joanne Balbarin, pp. 57-64]*. The plaintiff thus does not have standing to bring these claims, and is therefore not an adequate class representative."). In finding that the non-subscriber plaintiff had standing under the TCPA, the *Balbarin* court noted that the court in *Cellco*, "reasoned that the relevant language of the TCPA 'would require the party asserting the claim to be the party to whom the call is directed.'" *Balbarin*, 10 C 1846, 2011 U.S. Dist. LEXIS 5763 * 3-4 (N.D. Ill. Jan 21, 2011) (*citing Cellco Partnership v. Dealers Warranty, LLC,* No. 09-1814, 2010 U.S. Dist. LEXIS 106719, 2010 WL 3946713 * at 9 (D.N.J. Oct 5, 2010)). The "to whom the call is directed to" language refers to the regular user of the cell phones. In *Cellco*, the plaintiffs plead it was the corporate plaintiffs who had standing and not their subscribers, those who regularly used the cell phones. *Cellco*, 2010 U.S. Dist. LEXIS


106719 at * 2.   In this case, Plaintiff has plead that Plaintiff is the person "to whom the call is directed to", not Chivitte Nelson, whose phone never rang.4

Indeed, the Seventh Circuit in a TCPA junk fax case has used the word "called party" in the context of a *two-way communication*" to determine whether there existed a relationship between the entity placing the communication (the "caller") and the entity that received the communication (the "called party").   *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 451 (7th Cir. 2010) (emphasis added).   Clearly Chivette Nelson, the uncalled party, falls outside the Seventh Circuit's description of a two-way communication.

The two-way communication understanding of the Seventh Circuit in a TCPA case between a caller and a called party is further supported that in telecommunications law. *California*, 75 F.3d at 1357 n. 9, *supra*; In *the Matter of Communications Assistance for Law Enforcement Act*, 17 FCC Rcd 6896, 6911, 2002 FCC LEXIS 1716 at *46, *supra*.   For example, one of the principal consumer complaints that led to enactment of the TCPA is that autodialers, "did not disconnect when the called party hung up", which "created a potential danger of occupying a phone line that an individual may need in an emergency."   Note, *Can Those Telemarketing Machines Keep Calling Me?   – The Telephone Consumer Protection Act of 1991 after Moser v. FCC*, 36 Boston Coll. L. Rev. 85, 95 (Dec. 1994).   See S. Rep. No. 102-178, 1991 U.S.C.C.A.N. 1968 (1991).   This is an injury suffered by the user of the telephone, not by an uncalled person who Defendant "intended to call."   *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 2011 U.S. App. LEXIS 6786 * 8 (3rd Cir. Apr. 4, 2011) (noting that in

---

4 While it is unknown at this time what the prerecorded message Defendant used in this matter was word-for-word, Defendant has attached evidence that debt collectors use a prerecorded message that contains language that anticipates the collector is calling a wrong number which provided an explicit command to a person other than Chivette Nelson, "to hang up or disconnect"; a two-way communication. (Def. Memo. Ex. B, pp. 4-5 ¶ 24).

enacting the TCPA Congress noted that improper calls impose a cost on the called party).

Despite Congress' clear intent that recipients of calls to their cell phones have a private right of action, Defendant cites two *residential line* cases, *Leyse v. Bank of America* and *Meadows v. Franklin Collection Service, Inc.*, in support of its bizarre "intended called party" argument. The plaintiff in *Leyse*, was attempting an end run around the stay of the plaintiff's roommate's TCPA case which alleged the roommate, not Mr. Leyse, was the residential subscriber. *Leyse v. Bank of Am.*, 09 Civ. 7654 (JGK), 2010 U.S. Dist. LEXIS 58461 * 1-2, 6, 17 (S.D.N.Y. June 14, 2010). Plaintiff agrees that the *Lesye* court correctly found Mr. Lesye, who was not the residential subscriber, did not have standing under the TCPA when it interpreted standing for a "called party" within the meaning of § 227(b)(1)(B) to mean the person who is "associated [with] the phone number." *Id.*, at * 10-11. Indeed, this quoted language in *Leyse* undermines Defendant's argument and illustrates that Plaintiff here has standing as Plaintiff is the person associated with the cell phone number. (Complt. ¶ 13).

Plaintiff however, disagrees with the remainder of the *Leyse* court's analysis regarding whether an "intended recipient" of the call has standing. Whether a person in a *cellular telephone* case like this is the "intended recipient" of the call is irrelevant because the language of the TCPA regarding calls to cellular telephones does not include such a requirement. Furthermore, the TCPA in *residential line telemarketing situations* expressly uses the phrase "residential telephone subscriber." In determining the definition of an "established business relationship" under TCPA § 227(a)(2), it expressly incorporates the meaning of the terms used in 47 C.F.R. § 64.1200, which are used in relation to telemarketing call cases. 47 C.F.R. § 64.1200 in pertinent part states:

> *No person or entity shall initiate any call for telemarketing purposes to a residential*

>  *telephone subscriber* unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> * * *
>
>  (d)(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the *called party* with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.
>
> * * *
>
>  (e)(4) The term *established business relationship* for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary *two-way communication between a person or entity and a residential subscriber*. . . .
>
>  47 C.F.R. §§ 64.1200, 64.1200(d)(4), and (e)(4) (emphasis added).

The quoted language above regarding a "residential telephone subscriber" differs from the plain language regarding cell phone violations that explicitly refers to the "recipient" without reference to a "subscriber" of the cellular phone service. 47 U.S.C. §227(b)(1). Therefore, it is clear that *only* in *residential line* cases, such as was the case in *Leyse* and *Meadows v. Franklin Collection Service, Inc.*, 2011 U.S. App. LEXIS 2779 (11th Cir. 2011) (unpublished), that Congress intended in that other section of the TCPA to confer standing on the "residential telephone subscriber."

*Meadows v. Franklin Collection Service, Inc.*, does in fact make it clear that calls containing prerecorded messages calls placed to residential lines do not, "violate the TCPA because [ ] prerecorded debt-collection calls are exempt from the TCPA's prohibitions on such calls to *residences* * * * As the district court noted, the FCC has determined that debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions apply when a

debt collector contacts a non-debtor in an effort to collect a debt." *Meadows*, 2011 U.S. App. LEXIS 2779 at * 12-13 (emphasis added). Indeed, the court's legal analysis in both the *residential line* cases of *Meadows* and *Leyse*, should have began and ended at the FCC's Order rendering the remainder of those opinions *dicta*. *See Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580, 582 (7th Cir. 2005) (describing *dicta* as "that is, things the court said, not what it held; and only what a court holds is binding (within the limits of stare decisis, discussed below) in subsequent cases"). Plaintiff here however has alleged that Defendant's calls were made to Plaintiff's *cell phone*, (Complt. ¶ 13, 20), and therefore the holding relying of the FCC's Orders related to *residential lines only* is inapplicable to this matter.

*Cellco P'ship v. Dealers Warranty, LLC*, relied upon by Defendant was filed by Verizon Wireless, a cell phone service provider, *www.verizonwireless.com*, and OnStar, a communication accessory placed primarily in General Motors automobiles, *www.onstar.com*. In *Cello*, neither corporate plaintiff plead that it actually received an autodialed call from the defendants on their cell phones. *Cellco*, 2010 U.S. Dist. LEXIS 106719 at * 2 ("The allegations giving rise to the instant complaint stem from the purported placement of unsolicited telemarketing calls offering to sell extended auto warranties to millions of subscribers of plaintiffs . . ."). Clearly Verizon and OnStar who did not allege to have received any calls from the defendants, cannot have been the "called party" under the TCPA. However, this is exactly what Defendant is asking this Court to do, and find that Chivette Nelson, a person who Defendant did not call, is the "called party" with standing. (Def. Memo. p. 10).

The *Cellco* court's opinion that, "the only logical reading of § 227(b)(1)(A)(iii) is one that would require the party asserting the claim to be the party to whom the call is directed[,]" *Id*., at * 31, indeed undermines Defendant's position and should be read in the context of that

case. "[T]he party to whom the call is directed" as used by the *Cellco* court, refers to the person who regularly uses and receives calls on the cell phone. See *Id.* ("Plaintiffs are therefore correct in their assertion that under the express language of the TCPA, the question of standing turns on whether the claimant can establish a violation under the TCPA and not on whether it is a 'consumer.'"); *Id.*, at * 38-41, 48 (permitting the plaintiffs to file a third amended complaint for regarding those calls made on Verizon concession accounts to which Verizon employees received and for OnStar to allege calls made by defendants that were directly answered by OnStar equipment).

In this case, Defendant dialed Plaintiff's phone number and connected its call to Plaintiff's cellular telephone that Plaintiff regularly uses and generally carries. (Complt. ¶¶ 13, 20-21). It does not matter that Defendant "intended" to reach someone else, Chivette Nelson. What matters is that it dialed Plaintiff's cellular phone number using its automated equipment and Plaintiff is the regular user of the cell phone that Defendant called.

This matter is in fact similar to *Stuart v. AR Resources, Inc.*, No. 10-3520, 2011 U.S. Dist. LEXIS 27025, 2011 WL 904167 (E.D. Pa. March 16, 2011) which denied the defendant's motion to dismiss the plaintiff's TCPA claim. In *Stuart*, the court held that a complaint alleging that defendant placed autodialed calls to her cell phone seeking to collect a debt owed by a member of plaintiff's family stated a claim for violation of the TCPA. *Id.*, at *15-18. The facts in *Stuart* were very similar to those in the case at bar in that they both involve a wrong number dialed. *Id*.

Likewise, there is no "bona fide error" defense under the TCPA for dialing an unintended wrong number. The FCC in its July 25, 2003 Order expressly held that calls placed to the wrong number are covered by the TCPA, providing that:

> Finally, we reject proposals to create a good faith exception for inadvertent autodialed or prerecorded calls to wireless numbers and proposals to create implied consent because we find that there are adequate solutions in the marketplace to enable telemarketers to identify wireless numbers.

FCC Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, Docket No. 02-278, FCC 03-153 *reprinted in* 68 F.R. 44144, 44166 (July 25, 2003). ); FCC Release FCC 03-153, 18 FCC Rcd 14014, 14117, 2003 FCC LEXIS 3673; 29 Comm. Reg. (P & F) 830 (June 26, 2003), at par. 172. The FCC ruling was not challenged by a petition filed in the Court of Appeals within the requisite time, and is thus unchallengeable. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446-48 (7th Cir. 2010).

Likewise, Defendant's own trade association's, ACA, position on collection calls made to wrong persons points out the same, that autodialed calls to persons other than the debtor the collector is attempting to contact can trigger liability under the TCPA. (Complt. ¶¶ 26, 28).

Further undermining Defendant's position is authority that the "recipient", the regular user of the cell phone, and therefore the "called party" can revoke "express prior consent." *In re Rules and Regulations Implementing the TCPA*, GC Docket 02-278; 07-232 at 7, n. 37; *Sengenberger v. Credit Control Svcs.*, Inc., 09 C 2796, 2010 U.S. Dist. LEXIS 43874  * 4-5, 10 (N.D. Ill., May 5, 2010) *reconsideration granted by, Adhered to* 2010 U.S. Dist. LEXIS 142528 (N.D. Ill. June 17, 2010) (consumer requested that the defendant stop its collection calls). However, under Defendant's argument only Chivette Nelson who could file suit under the TCPA, (Def. Memo. p. 10), thereby leaving Plaintiff helpless to stop Defendant's and all other collectors autodialed phone calls with prerecorded messages looking for Chivette Nelson. Clearly as demonstrated by the revocation of express prior consent case law above, Defendant's argument lacks merit.

Additionally, one court has found for a plaintiff where the defendant dialed his cell phone, a number the plaintiff had alleged he did not provided to his original creditor, in rejecting the defendant's arguments of implied consent and that it reasonably relied on the seller of the debt to provide the appropriate contact information. *Edeh v. Midland Credit Management, Inc*., 2010 WL 3893604, 2010 U.S. Dist. LEXIS 103888 * 2-3, 16 (D. Minn., Sept. 29, 2010). The holding in *Edeh*, supports Plaintiff's position that it is the individual who is associated with the cell phone number, the user of the cell phone at the time it is called, is the "called party" who must provide "express prior consent" to the autodialed phone call.

## CONCLUSION

WHEREFORE, to insert the requirement that the party with standing in a TCPA cellular telephone case is the "intended recipient" as Defendant argues, would be contrary to the plan language of the statute, the technical requirements of the statute, the intent of the statute, FCC Orders, case law and would make the remedy provisions of TCPA § 227(b)(3) meaningless. Therefore, this Court should deny Defendant's 12(b)(1) Motion to Dismiss as under the TCPA Plaintiff is the "called party" with standing to seek redress.

                        Respectfully submitted,

                        s/ Curtis C. Warner
                          Curtis C. Warner

Curtis C. Warner    (6282197)
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)

## CERTIFICATE OF SERVICE

I, Curtis C. Warner, hereby certify that on **April 28, 2011**, I filed electronically **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** using the Court's CM/ECF system, which automatically will send notice to those parties who have appeared and are so registered to the following:

David M. Schultz dschultz@hinshawlaw.com
James C. Vlahakis jvlahakis@hinshawlaw.com
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000 (TEL)

                                          Respectfully submitted,

                                          s/ Curtis C. Warner
                                              Curtis C. Warner

Curtis C. Warner (6282197)
cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
(312) 238-9820 (TEL)