**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| D.G., by and through LOIDY TANG as Next Friend, individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-cv-02062 |
| DIVERSIFIED ADJUSTMENT SERVICE, INC., | ) ) ) | Judge Lefkow |
| Defendant. | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant COLLECTO, INC. ("Defendant"), by its undersigned attorneys, respectfully submits this Reply in support of Defendant's Motion to Dismiss:

**INTRODUCTION**

The parties agree that Defendant is a debt collector who was attempting to call Chivette Nelson to collect a debt Ms. Nelson owed to a client of Defendant. Dkt. #1, Complaint, ¶¶1-2, 21. The parties disagree as to whether Plaintiff, a minor, has standing to assert a cause of action under Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"). An examination of Pacer demonstrates that Plaintiff and/or his mother have been the *unintended* recipients of debt collection efforts made by *other* debt collectors who have been attempting to contact Chivette and/or Kimberly Nelson. While Plaintiff claims that he does not know who Ms. Nelson is (Complaint ¶23), Plaintiff appears to concede that his telephone number may have once belonged to Ms. Nelson because he alleges that Defendant obtained the number via a skip trace of Ms. Nelson (¶24).

Plaintiff's Response to Defendant's Motion to Dismiss confirms why this Court should grant Defendant's motion. Plaintiff's Response reconfirms the fact that Defendant (1) did not intend to call Plaintiff and (2) that Defendant *intended to call Chivette Nelson* to collect a debt

owed by Ms. Nelson. As such, Chivette Nelson, not Plaintiff was the "called party" at the terms is sued within the TCPA.

Plaintiff's Response interprets the TCPA so as to render meaningless the exemptions set forth in Section 227(b)(1) for calls made to a "called party" who may have given prior consent. As Defendant has argued, only an intended recipient (the party it was attempting to call – Chivette Nelson) could provide "prior express consent." As discussed below, Plaintiff presents incorrect assertions regarding Defendant's argument and cites distinguishable or flawed case law. Plaintiff also reads into the TCPA terms such as "regular user" and "subscriber," which are terms Defendant does not argue is the meaning of "called party." Most importantly, Plaintiff fails to distinguish recent case law holding that a "called party" is the *intended recipient* of the call. For these reasons, Plaintiff has no standing and this Court lacks subject matter jurisdiction.

## ARGUMENT

**I.   PLAINTIFF'S READING OF THE TCPA IS WRONG AND THE AMENDED COMPLAINT FAILS TO STATE A TCPA CLAIM IN COUNT I**

   **A.   Plaintiff's Reading Renders Portions of the TCPA Meaningless**

Plaintiff's interpretation of the TCPA runs contrary to plain meaning of the TCPA. As set forth by the Supreme Court:

> It is incumbent upon courts to read each statutory provision as having meaning, and to construe the statute so the "meaning of each would inform[s] the others and all in their aggregate tak[e] their purport from the setting in which they are used" [citations omitted]

*United States Nat'l Bank v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 454 (1993). *See also*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ([A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant") (citations omitted).

2

Plaintiff has attempted to assert a cause of action under Section 227(b)(1)(A) of the TCPA. In doing so, however, Plaintiff has attempted to avoid Defendant's standing argument by pointing to Section 227**(b)(3)** of the TCPA, which provides that "a person or entity" is entitled to bring an action for each TCPA violation (Pl's Response at 5). However, in order to *bring* a private cause of action under Section 227(b)(3), a plaintiff must <u>first</u> demonstrate an independent violation of Section (b)(1)(A)(iii). *See, e.g., Cellco P'ship. v. Dealers Warranty, LLC*, 2010 WL 3946713, at *9 (D.N.J. Oct. 5, 2010).

To recap, Section (b)(1)(A)(iii) provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . *to make any call* (*other than a call made* for emergency purposes or made *with the prior express consent of the <u>called party</u>*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . *to any telephone number assigned to* a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, *or any service for which the called party is charged for the call*[.]

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

Plaintiff's reading – that <u>anyone</u> who receives a call has standing to assert a TCPA claim – would render meaningless the exception contemplated by Congress for calls made with "the prior express consent of the called party." *Cellco P'ship*, 2010 WL 2382400, at *9. Here, only the debtor which Defendant was attempting *to call*, the called party, *the intended recipient of the call*, could have given "prior express consent" to receive the subject call. Put another way, the only logical way to interpret the TCPA's use of the phrase "called party", is to read this time to include only the intended recipient of the call – Chivette Nelson. This is the only way the statutory scheme of the TCPA works because it would make no sense for Congress to require debt collectors to obtain the consent of unintended recipients when it is attempting in its outgoing message to contact debtors such as Chivette Nelson.

3

### B. The Cases Plaintiff Cites Do Not Support His Claim

Plaintiff cites several easily distinguishable cases at pages 4-5 of his Response (dkt. 14). First, *Lozano v. Twentieth Century Fox Film Corp.*, 702 F.Supp.2d 999 (N.D. Ill. 2010) addressed whether a "call" included a text message from telemarketers, an issue totally different than here. The language in *Lozano* quoted by Plaintiff was included in the court's discussion of the constitutionality of TCPA § 227, another issue not before the Court. *Id.* at 1011.

Second, *Abbas v. Selling Source, LLC*, 2009 WL 4884471, 2009 U.S. District LEXIS 116697 (N.D. Ill. March 23, 2010) addressed text messages sent by a telemarketer. The court's language quoted by Plaintiff was stated as part of the court's analysis of the defendants' First Amendment claim. 2009 WL 4884471, at *7, 2009 U.S. Dist. LEXIS 116697, at *27. The First Amendment is not implicated in Defendant's Motion to Dismiss.

Third, *Watson v. NCO Group, Inc.*, 462 F.Supp.2d 641, 643 (E.D. Pa. 2006) addressed a plaintiff's claim that he moved into a new residence and began receiving repeated prerecorded or mechanical calls from a debt service to whom he owed no debt. The court cited the FCC exemption for calls made to a party on a residential line with whom the caller has an "established business relationship." The court held that since all debt collection calls were premised on a prior or existing business relationship, an erroneously called non-debtor did not have an "existing business relationship." *Id.* at 644. The court also found that the calls did not fit the FCC's exemption for commercial calls to a residential line that do not adversely affect privacy rights and do not transmit an unsolicited advertisement. The court said that while the FCC has declared that a non-debtor privacy rights are not adversely affected when he receives debt collection calls, a non-debtor's rights are only violated when he is subjected to *repeated annoying and abusive debt collection calls*. *Id.* at 244-45. There is no similar set of FCC exemptions for the alleged

4

calls to Plaintiff's cell phone, and no allegations of "repeated annoying and abusive debt collection calls."

Furthermore, since *Watson* was decided, several courts addressing the issue have found debt collection calls to non-debtor residential lines were <u>not</u> TCPA violations, in disagreement with *Watson*. *Meadows v. Franklin Collection Serv., Inc.,* 2010 WL 2605048, at *6, 2010 U.S. Dist. LEXIS 72340, at *16-17 (N.D.Ala. June 25, 2010), *aff'd in relevant part* 2011 WL 47997, at *4, 2011 U.S. Dist. LEXIS 2779, at *12-13 (11th Cir. Feb. 11, 2011) (calls to landline telephone of non-debtor); *Santino v. NCO Finan. Sys.,* 2011 WL 754874, at *5-6, 2011 U.S. LEXIS 18185, at *12 (W.D.N.Y. Feb. 24, 2011) (calls to landline telephone of non-debtor).

More recently, Plaintiff has sought leave of Court to cite to a recently issued case, *Anderson v. AFN, Inc.*, 2011 WL 1808779 (E.D. Pa. May 11, 2011) (dkt. no. 16). Defendant does not object to Plaintiff's motion for leave. However, the *Anderson* case is flawed to the extent hat it ignores the plain words of the TCPA which talks in terms of the "called party." While the *Anderson* court accepted the term "called party" meant the "intended recipient," without any a citation to any authority, the court then found that the term "called party" could nevertheless be applied to *unintended* recipients of phone calls:

> If we assume that the term "called party" is synonymous with "intended recipient" (and does not refer to the person who received the call and hence was "called"), we nonetheless do not believe that granting standing to persons other than "called parties" does any violence to the statute itself or to its application in practice.

*Id*. at *8. Aside from citing to no authority to support this novel interpretation of the TCPA, the Anderson court seemed to take comfort in finding that the "prior express consent" argument would protect defendants from being sued by unintended recipients:

> After all, the exception for calls "made with the prior express consent of the called party" can operate to protect a defendant from liability even if someone other than the "called party" seeks to bring suit. Here, for instance, AFNI could conceivably claim that it had the prior express consent of Sampson even though it is Anderson who brings this case.

5

*Id*. This rationale is misplaced, as it will require every defendant who is sued by *unintended* recipient (the so-called "fortuitous" plaintiff mentioned by the *Anderson* court), to prove that it had consent to call the called party/intended recipient. Plaintiff, however, has other designs, and seeks to turn this case into a multi-million dollar class action for similarly "fortuitous" class members. Given the fact that millions of people transfer cell numbers on every year, it is highly burdensome for debt collectors like Defendant to have to defend cases like the present under the purported rationale set forth by *Anderson*. To the extent that *Anderson* court suggested that it was not fair to limit a cause of action to the "called party" (*Id*. at *8), that is a matter best left for Congress or the FCC to decide to the extent that the plaintiff's bar wishes to argue that Defendant's reading of the TCPA is "unfair." Defendant is simply reading the words drafted by Congress in the most logical manner to avoid the absurd result of allowing every unintended recipient of a cell phone call via a purported autodialer to sue the entity placing the call. *See United States Nat'l Bank*, 508 U.S. 439 at 454; *Duncan*, 533 U.S. at 174.

   **C.  Plaintiff's Reference to § 227(d) of the TCPA Misses the Mark**

  Plaintiff's reference to Section 227(d) is a red herring (Pl.'s Response at pp. 6-7). First, Plaintiff glosses over the fact that Section 227(d), also uses the term "called party" just like Section 227(b)(1)(A)(iii.) Second, Section 227(d) does not contain any contrary definition of the term "called party." Third, the term "called party" includes only the intended recipient of calls, not the "regular user" of the cell phone as Plaintiff suggests (Response at pp. 5, 7, 8 and 13). *See also*, Section D below. Fourth, the express language of the TCPA and the cases that have addressed this issue provide that there is no private cause of action for an alleged violation of § 227(d). *See, e.g., Worsham v. Ehrlich,* 181 Md.App. 771 728-29, 957 A.2d 161, 171 (Md.App. 2008).

130102716v1 0922542 07791

Furthermore, numerous courts have reached the same conclusion that a private right of action does not exist under § 227(d) of the TCPA. *Holmes v. Back Doctors, Ltd.,* 695 F.Supp.3d 843, 854 (S.D. Ill. 2010) ("'Like substantive law itself, private rights of action to enforce federal law must be created by Congress,' and absent legislative intent to create a private right of action, 'courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'", *quoting Alexander v. Sandoval,* 532 U.S. 275, 286-87, S.Ct. 1511 (2001)). *See also*, *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* 2066 WL 1132386 (N.D.Ill. April 19, 2006); *Klein v. Vision Lab Telecomm., Inc.,* 399 F.Supp.2d 528 (S.D.N.Y. 2005); *Adler v. Vision Lab Telecomm., Inc.,* 393 F.Supp.2d 35 (D.D.C. 2006); *Boydston v. Asset Acceptance LLC,* 496 F.Supp.2d 1101 (N.D. Cal. 207); *Lary v. Flasch Bus. Cons.,* 858 So.2d 1158 (Ala.Ct.App. 2003); *Culbreath v. Golding Enter., LLC,* 2006 WL 1431408 (Ohio Ct.App. 2005).

Although Congress created a private right to action under subsections (b) and (c), Subsection (d) *does not* contain language that provides for private cause of action as expressly stated in subsections (b) and (c).[1] Accordingly, no private right of action exists under subsection (d). *Id.* Rather, the right of action for alleged violations of subsection (d) are addressed in subsection (f) and subsection (f) allows only the Attorney General of the state to bring an action for any violation under "this section." *See* 47 U.S.C. 227(f)(1). As a result, even if Plaintiff alleged a violation of subsection (d), which is not the case, he has no right to bring such a claim.

### D. Plaintiff's "Regular User" Argument Misses the Mark

Plaintiff's Response discussed the person who at the time of the call "regularly uses" the phone (Pl's Response at pp. 5, 7, 8 and 13). There is nothing in the text of the TCPA discussing the term "regular user" much less a cause of action for so-called "regular users." That is because

---

[1] Under subsection (b), the TCPA provides for a private right of action that is based upon violation of "this subsection." *See* 47 U.S.C. 227(b)(3). Under subsection (c), once again, the TCPA provides a private right of action that is based upon a violation of "this subsection." *See* 47 U.S.C. 227 (c)(5).

7

the term "regular user" would not make sense in terms of determining who has a cause action. For example, if Chivette Nelson's boyfriend was the "regular user" of the phone and he picked up a call intended for Chivette, he would not have a cause of action, despite being the so-called "regular user" of the telephone number in question. Accordingly, Plaintiff's "regular user" argument, using a non-textual term, makes no sense under the TPCA's statutory scheme.

The key text for purposes of this case is TCPA § 227(b)(1)(A), which Plaintiff wrongly interprets. TCPA § 227(b)(1)(A) specifically exempts calls to a cellular phone if there is "prior express consent of the called party." TCPA § 227(b)(1)(B), also exempts calls to residential telephone lines if there is "prior express consent of the called party." Prior express consent is necessary for calls to both cellular and residential lines. Plaintiff confuses matters by arguing against the "called party" as being the "subscriber," (Pl's Response at pp 7-8), an argument Defendant does not make but which has been rejected. *Gutierrez v. Barclays Group,* 2011 WL 579238, 2011 U.S. Dist. LEXIS 12546 (S.D. Cal. 2011).

At the same time, it is unclear how an *unintended* recipient can or cannot give or revoke consent since that person did not have a relationship with the creditor or the debtor. For example, let's assume that Ms. Nelson had once owned the cell phone number in question and gave prior express consent to be called at any number located by the creditor, but that Nelson's cell phone account was closed after she could not pay her bill. Under Plaintiff's theory, the person who inherited Nelson's number and received the call (the unintended recipient) would have a TCPA claim, even though consent given by Ms. Nelson. This would lead to an absurd result.

    E.    **Plaintiff's Cases Regarding the Phrase "Called Party" Are Distinguishable**

8

Plaintiff attempts to cite to various cases at pages 7 through 10 of his Response – these cases do not support the denial of Defendant's Motion to Dismiss. A page 7, Plaintiff cites *California v. FCC*, 75 F.3d 1350, 1357 n.9 (9th Cir. 1996). This case it not on point. The cursory remark quoted by Plaintiff in a footnote involving completely different issues ("blocking") from those before this Court, without any explanation or analysis to the facts of this case. The case also observed that "[a] phone number is not among the select privacy interests protected by a federal constitutional sight of privacy." *Id.* at 1361-62. As such, it does not support the denial of Plaintiff's Motion to Dismiss.

Plaintiff cites *Balbarin v. N. Star Capital Acquisitions, LLC*, 2011 U.S. Dist. LEXIS 686, at *5 (January 5, 2011) at page 8 of his Response. *Balbarin* is not on point for that court observed that the plaintiff *was the intended recipient of the call*, unlike Plaintiff in this case. *Id.*

Plaintiff also cites *C.E. Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 451 (7th Cir. 2010) at page 9 of his Response. *C.E. Design* was an unsolicited fax advertisement case. There, the court was addressing the FCC's "established business relationship" exception for telephonic faxes which is addressed in TCPA § 227(b)(1)(C). The FCC explained that such a relationship is formed by a voluntary two-way communication between the caller and the called party, such as publishers with subscribers. *Id.* at 451. If anything, such an "established business relationship" is between the caller and intended recipient, (the called party), otherwise no established relationship could possibly be had with an unintended recipient who is called. Here, the message allegedly left (Compl. ¶¶ 21-22), confirms that Chivette Nelson was the called/intended party for a debt that she may have owed.

Plaintiff also cites *In the Matter of Communications Assistance for Law Enforcement Act*, 17 FCC Rcd 6896, 2002 WL 534605, at *14, 2002 FCC Lexis 1716 at *46 (Response at 9). The FCC was addressing a totally distinct issue from the issue before this Court. As part of its

9

analysis, the FCC observed that Newton's Telecommunications Dictionary defines "destination" as "an address or field" that indicates for whom a message is intended. *Id*. at 14.[2]

### F. Plaintiff Fails to Distinguish Defendant's Authorities

Plaintiff's Response at pages 10 and 11 attempts to distinguish *Leyse v. Bank of Am.*, 2010 WL 2382400, 2010 U.S. Dist. LEXIS 58461 (S.D. N.Y. June 14, 2010), as a "*residential line case*." (Response at 8-10) (emphasis in original). Plaintiff's argument ignores that both the cell phone and residential telephone line restrictions in TCPA §227(b)(1) exempt calls "made with the prior express consent of the called party." The court, however, concluded that the plaintiff was not "a 'called party' within the meaning of §227(b)(1)(B). The uncontroverted evidence shows that DialAmerica, the entity that placed the call on behalf of Bank of America, placed the call to Dutriaux, Leyse's roommate and the telephone subscriber." 2010 WL 2382400, at *4. The court went on to hold "[t]o the extent that Leyse picked up the phone, he was an unintended and incidental recipient of the call." *Id*. As Defendant has previously argued, the court explained its reasoning based on the text of the TCPA:

> The face of the statute itself permits prerecorded calls when a business has the prior express consent of the "called party." 47 U.S.C. §227(b)(1)(B). It is apparent that in this case Leyse was not the called party, although Leyse answered the telephone. Bank of America called Dutriaux, and it is Dutriaux who could grant permission for Bank of America to place that call to her, or pursue her statutory damages. Bank of America did not call Leyse; therefore, Bank of America was not required to seek Leyse's permission to place the call.

2010 WL 2382400, at * 5. The reasoning of the *Leyse* court is applicable to cell phone users as well as residential users.

---

[2] Plaintiff also cites *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 2011 WL 1226371, 2011 U.S. App. LEXIS 6786 (3rd Cir. April 4, 2011) (Response at 8). The case addressed the issue of federal jurisdiction in an unsolicited fax advertisement case. *See* TCPA § 227(b)(1)(c) (regulating unsolicited faxes).

Plaintiff also trys to avoid the application of *Leyse* by referring to the terms "established business relationship" and "subscriber" in the TCPA and an FCC regulation related to telemarketing. (Response 11). Defendant is <u>not</u> moving to dismiss this case under an "established business relationship" defense. Further, the term "residential subscriber" appears in TCPA § 227(a), which is not relevant. The term does not appear in TCPA §227(b), under which Plaintiff brings his alleged claim. For both cell and residential lines, the statute exempts calls made with the "prior express consent of the called party." TCPA § 227(b)(1)(A) and (B). Finally, Plaintiff does not allege he was a "subscriber" of the cell phone in question and Defendant is not moving to dismiss based upon Plaintiff's failure to allege that he was a subscriber.

At page 12vPlaintiff also tries to distinguish *Leyse* and *Meadows v. Franklin Collection Service, Inc.*, by claiming that "the court's legal analysis . . . should have began and ended at the FCC's order rendering the remainder of those opinions *dicta*." Parties cannot avoid the logic and application of an opinion by simply claiming that "that's just *dicta* judge!" If that were the case, it would be too easy for parties to dissuade court's from applying or following the logic of prior decision. Regardless, *Leyse* and *Meadows v. Franklin Collection Service, Inc*. correctly found that unintended recipients could not state causes of action for purported violations of the TCPA.

Plaintiff also fails to distinguish *Cellco* (Response at 12-13). Again, Plaintiff cannot avoid the logic of a court's rationale by simply stating that it only applied to the institutional plaintiffs that brought the suit. There is nothing in the court's opinion restricting the opinion. Accordingly, he fact that the plaintiffs in *Cello* did not make any calls does not detract from the court's reasoning, and certainly does not support Plaintiff's argument that an unintended recipient is a "called party" with standing. As the *Cellco* court clearly explained:

> The statutory scheme simply cannot support an interpretation that would permit any "person or entity" to bring the claim for a

11

> violation, regardless of whether that person or entity was the called party (i.e., the intended recipient of the call). Under such an interpretation, the exception contemplated by Congress in §227(b)(1)(A) for calls made with "the prior express consent of the called party" would be rendered meaningless. Accordingly, this Court finds that under the statute's plain meaning, it is the intended recipient of the call that has standing to bring an action for a violation of §227(b)(1)(A)(iii).

2010 WL 3946713, at *10. Here, Plaintiff's Amended Complaint at paragraph 19 confirms that the party to whom the call was directed was Chivette Nelson.

Plaintiff cites *Stuart v. AR Resources, Inc.,* 2011 WL 904167, 2011 U.S. Dist. LEXIS 27025 (E.D.Pa. March 16, 2011), which found that the non-debtor plaintiff stated a claim. (Response p. 13). Respectfully, Stuart did not properly analyze the TCPA consistent with *Cellco* and *Leyse*.

### G. Plaintiff's Remaining Arguments Do Not Support Plaintiff Having Standing

Plaintiff asserts there is no "bona fide error defense" (Response at 13-14). This argument is misplaced as Defendant does not argue such a defense in the motion. Having said that, Plaintiff is improperly attempting to shift the burden of proof onto Defendant without identifying any basis to do so.

Plaintiff's isolated citation to a FCC Report and Order (Response at 14) that specifically refers to "telemarketers" does not support finding Defendant liable for calls to wrong parties. Rather, the paragraph quoted by Plaintiff in his Response follows Section 1 of the FCC Report and Order, entitled "Telemarketing Calls to Wireless Numbers," and is at the very end of Section 2, entitled "Wireless Number Portability and Pooling." The context of both section 1 and section 2 is telemarketers, not debt collectors. *In re* Rules and Regulations, 2003 WL 21517853, at *14115-14118. Debt collectors are not even mentioned. The paragraph quoted by Plaintiff, referring to "telemarketers," does not support Plaintiff's position, especially in light of the *Leyse* and *Cellco P'ship* cases cited above.

Plaintiff cites the ACA statement (Response at 14). ACA statements to its clients are not the law and do not impose liability on its members. Rather, it is clear that the ACA was simply providing cautionary and conservative advice to its members but in effect admitted that there was no certainty on calls to the wrong individual.

Plaintiff incorrectly concludes that revoking prior express consent somehow undermines Defendant's position. (Response at 14). However, in the cases that Plaintiff cites, *Sengenberger v. Credit Control Svcs., Inc.*, 2010 WL 1791270, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010), involved a plaintiff who was the intended recipient, *i.e.*, the debtor for whom the defendant was trying to collect a debt. No issue of revocation is involved in this case.

Finally, Plaintiff's citation to *Edeh v. Midland Credit Mgmt., Inc.*, 748 F.Supp. 2d 1030 (D. Minn. 2010) does not support Plaintiff's assertion that the "user" of the cell phone at the time of the call is the "called party" for the purposes of the TCPA. Again, *Edeh* involved the debtor and intended recipient receiving the calls.

## **CONCLUSION**

For the foregoing reasons, Defendant DIVERSIFIED ADJUSTMENT SERVICE, INC. respectfully submits that the Court grant its Motion to Dismiss.

                                            Respectfully submitted,

                              By: /s/*James C. Vlahakis*
                                    One of the Attorneys for Defendant
                                    DIVERSIFIED ADJUSTMENT SERVICE, INC.

David M. Schultz
James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
jvlahakis@hinshawlaw.com
jryan@hinshawlaw.com

## **CERTIFICATE OF FILING**

I hereby certify that on May 23, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com

130102716v1 0922542 07791